# MORTGAGE

**DOCUMENT NUMBER**
**967997**

**NAME & RETURN ADDRESS**

CM01    97118746
Review, Packaging, & Shipping Dept
First Federal Savings Bank
P O Box 1868
La Crosse, WI  54602-1868

**PARCEL IDENTIFIER NUMBER**
292-1315-0922-025

Office of Register of Deeds
Dodge County, WI
RECEIVED FOR RECORD

OCT 9 2002

at 12:47 o'clock P M.
*Chris Planasch*
CHRIS PLANASCH - Registrar

--- [Space Above This Line For Recording Data] ---

THIS IS A PURCHASE MONEY MORTGAGE.

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is 15 pages in length.
Date FEB 1 6 2023
By *Chris Planasch*
Register of Deeds or Deputy
Dodge County, Wisconsin

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    October 4, 2002
together with all Riders to this document.
(B) "Borrower" is

CHRISTOPHER J BLOTZER AND RHONDA S. BLOTZER,
HUSBAND AND WIFE

2023 MAR -3 PM 2:26

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is  First Federal Savings Bank LaCrosse - Madison

Lender is a  federally-chartered, federally-insured savings bank
organized and existing under the laws of    United States of America

PAGES 17-29213
7-8-11-12
WERE NEVER
INITIALED.

MORTGAGE

Lender's address is 605 State Street, LaCrosse, WI  54601

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated  October 4, 2002

The Note states that Borrower owes Lender

   *** NINETY NINE THOUSAND & 00/100 ***                       Dollars

(U.S. $    99,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than As Stated in Said Note   .

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Case 17-29213-kmp   Doc 81   Filed 03/03/23   Page 3 of 68

CM01B

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the County of Dodge :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LOT 15, OF EAST VIEW ESTATES TO THE CITY OF WAUPUN, DODGE COUNTY, WISCONSIN, ACCORDING TO THE PLAT THEREOF RECORDED IN THE OFFICE OF THE REGISTER OF DEEDS, IN AND FOR DODGE COUNTY, WISCONSIN.

which currently has the address of

717 SUNRISE AVE                    [Street]

WAUPUN                    [City] , Wisconsin      54963      [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(WI) (0005)                    Page 3 of 15                    Initials:                    Form 3050   1/01

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower

Initials:

shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

-6(WI) (0005)                    Page 6 of 15              Initials: [signature]         Form 3050 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable

Case 17-29213-kmp    Doc 81    Filed 03/03/23    Page 8 of 68

Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

 -6A(WI) (0005)

Page 8 of 15

Initials:_____

Form 3050   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials:

-6(WI) (0005)                                 Page 9 of 15                                 Form 3050 1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____



**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Accelerated Redemption Periods.** If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

**25. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____  _____ (Seal)
CHRISTOPHER J BLOTZER                              -Borrower

_____  _____ BY POA (Seal)
RHONDA S BLOTZER                                  -Borrower

_____ (Seal)  _____ (Seal)
-Borrower                            -Borrower

_____ (Seal)  _____ (Seal)
-Borrower                            -Borrower

_____ (Seal)  _____ (Seal)
-Borrower                            -Borrower

-6(WI) (0005)                Page 14 of 15              Form 3050  1/01

**STATE OF WISCONSIN,** Dodge County ss:

The foregoing instrument was acknowledged before me this October 4, 2002 by CHRISTOPHER J BLOTZER and RHONDA S BLOTZER

My Commission Expires: 12-04-05

_Clarissa Lastch_
Notary Public, State of Wisconsin

This instrument was prepared by

Brenda L. Ecker
First Federal Savings Bank
La Crosse - Madison

-6(WI) (0006)          Page 15 of 15          Form 3050  1/01

*1051046*
Document Number
Office of Register of Deeds
Dodge County, Wisconsin
**RECEIVED FOR RECORD**

Jul 27, 2005

at _12:34_ o'clock _P._ M.

Chris Planasch
CHRIS PLANASCH - Register

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is _5_ pages in length.
Date _FEB 16, 2023_
By _Chris Planasch_
Register of Deeds ~~or Deputy~~
Dodge County, Wisconsin

When recorded mail to:
*FIRST AMERICAN TITLE INSURANCE*
*1228 EUCLID AVENUE, SUITE 400*
*CLEVELAND, OHIO 44115*
*ATTN: FT1120*

Parcel Number:# 292-1315-0922-025

**MORTGAGE**    Appl # 0506228651
(With Future Advance Clause)    Loan # ████████00594

☐ **Construction Mortgage.** This is a Construction Mortgage which secures an obligation incurred for the construction of an improvement on the Property, which may include the Property's acquisition cost. This obligation provides for future advances made for the completion of the contemplated improvement on the mortgaged Property.

─── State of Wisconsin ───    Space Above This Line For Recording Data ───

006248

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is    June 24, 2005    and the
parties, their addresses and tax identification numbers, if required, are as follows:
MORTGAGOR:
    CHRISTOPHE J BLOTZER AND RHONDA S BLOTZER, HUSBAND AND WIFE

    842

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

LENDER: Associated Bank
    1305 Main St
    Stevens Point, WI 54481

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

    See attached legal description

The property is located in    Dodge                at  717 SUNRISE AVE
                        (County)
, WAUPUN                        , Wisconsin 53963-9664
        (Address)            (City)                (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $      30,000.00                . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

    Loan number 4009293770200594 dated 6/24/05 in the amount of $ 30000.00 for borrowers: CHRISTOPHER J BLOTZER ,
    RHONDA S BLOTZER

    B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced, and whether or not the purpose of the future advances or future obligations is related to the purpose of the Secured Debt. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date

**WISCONSIN - MORTGAGE** (NOT FOR FNMA, FHLMC, FHA OR VA USE)    (page 1 of 4)
Experel © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-WI 12/13/2001
███-C166(WI) (0402)    VMP Mortgage Solutions (800)521-7291
40001-DGC-1



this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

    C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

    D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

**5. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**6. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

    A. To make all payments when due and to perform or comply with all covenants.

    B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**8. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**9. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. Section 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

If Lender exercises this option, Lender shall give Mortgagor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Mortgagor must pay all sums secured by this Security Instrument. If Mortgagor fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice of demand on Mortgagor.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform the covenants and agreements contained in this Security Instrument regarding preserving or insuring the Property, then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's right in the Property, and after sending Mortgagor written notice and allowing Mortgagor a reasonable opportunity for performance, when legally required. Notice is not required for an agricultural transaction where the collateral is perishable and threatens to decline speedily in value.

If there is a legal proceeding that may significantly affect Lender's right in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), the Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property, after sending Mortgagor a written notice of the right to cure and waiting 15 days, if applicable.

Lender's actions under this section may include paying any sums secured by a lien that has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this covenant, Lender does not have to do so, nor does it preclude Lender from exercising any other of Lender's rights under the law or this Security Instrument.

Any amount paid by Lender to protect Lender's security interest, in accordance with the terms of this Security Instrument, shall be secured by this Security Instrument. These sums will be due on demand and will accrue interest at the highest rate in effect from time to time on the Secured Debt from the date of payment until paid in full.

**12. ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

**13. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium, time share estate or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium, time share estate or planned unit development.

**14. DEFAULT.** Mortgagor will be in default if any of the following occur with regard to the Secured Debt which is secured by this Security Instrument: (1) with respect to a transaction other than one pursuant to an open-end plan, (a) if the interval between scheduled payments is 2 months or less, to have an outstanding amount exceeding one full payment which has remained unpaid for more than 10 days after the scheduled or deferred due dates, or the failure to pay the first payment or the last payment, within 40 days of its scheduled or deferred due date, (b) if the interval between scheduled payments is more than 2 months, to have all or any part of one scheduled payment unpaid for more than 60 days after its scheduled or deferred due date, (c) if the transaction is scheduled to be repaid in a single payment, to have all or any part of the payment

*(page 2 of 4)*

Case 17-29213-kmp    Doc 81    Filed 03/03/23    Page 19 of 68

unpaid for more than 40 days after its scheduled or deferred due date; (2) with respect to a transaction pursuant to an open end plan, failure to pay when due on 2 occasions within any 12-month period; or (3) if any other condition in this Security Instrument is violated, and such breach materially impairs the condition, value or protection of or Lender's right in the Property, or materially impairs Mortgagor's ability to pay amounts due.

**15. NOTICE OF DEFAULT AND RIGHT TO CURE.** Where required by law, Lender will send Mortgagor written notice of default and right to cure. The notice shall specify (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 15 days from the date the notice is mailed to Mortgagor, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property. The notice shall further inform Mortgagor of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Mortgagor to acceleration and sale. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. ACCELERATION.** If the breach is not cured on or before the date specified in the notice of default, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and other remedies permitted by applicable law.

**17. DEFAULT CHARGES AND ATTORNEYS' FEES.** Lender shall be entitled to collect all statutory collection expenses incurred in the disposition of the Property and such other charges as are specifically authorized by Wis. Stat. Ch. 421 to 427, or if the Property is secured by a first lien real estate mortgage or its equivalent security interest as defined in Wis. Stat. Ch. 428, those expenses authorized by that chapter, including attorneys' fees, to the extent permitted. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. After Mortgagor has paid all sums secured by this Security Instrument, and Lender has terminated any commitments for future advances, Lender shall release this Security Instrument without charge to Mortgagor. Mortgagor agrees to pay for any recordation costs of such release.

**18. POWER OF SALE.** If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Mortgagor and to the other persons prescribed by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all statutory collection expenses as described in section 17 above; (b) to all sums secured by this Security Instrument; and (c) the excess, if any, to the clerk of the Circuit Court of the County in which the sale is held.

**19. MORTGAGOR'S RIGHT TO REINSTATE.** The Mortgagor may redeem the Property at any time before the sale by paying the following: (a) the amount of the judgment, with interest and statutory collection expenses as described in section 17 above; (b) any statutory collection expenses incurred after the judgment; and (c) any taxes paid by the Lender after the judgment, with interest from the date of payment. The rate of interest paid will be the same rate of interest as found in the Secured Debt.

**20. FORECLOSURE WITHOUT DEFICIENCY.** If this Property is a 1-4 family residence that is owner-occupied at the beginning of a foreclosure action, a farm, a church or a tax-exempt nonprofit charitable organization, then Mortgagor agrees to the provisions of Wis. Stat. Section 846.101, as amended, permitting Lender to waive its right to a judgment for a deficiency on real estate of 20 acres or less, and to hold a sale of the Property six months after the foreclosure judgment is entered. If this Property is not a 1-4 family residence that is owner-occupied at the beginning of a foreclosure action, a farm, a church or a tax-exempt nonprofit charitable organization, then Mortgagor agrees to the provisions of Wis. Stat. Section 846.103, as amended, permitting Lender to waive its right to a judgment for a deficiency, and to hold a sale of the Property three months after a foreclosure judgment is entered. Regardless of terms to the contrary, if Mortgagor abandons the Property, then the sale of the Property shall be after two months from the date a foreclosure judgment is entered.

**21. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state of Wisconsin and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.
Mortgagor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**22. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**23. INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding sentence can change during the term of the loan. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument, after sending Mortgagor written notice and allowing Mortgagor a reasonable opportunity for performance, when legally required. Notice is not required for an agricultural transaction where the collateral is perishable and threatens to decline speedily in value.
    All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Exper<u>s</u> © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-WI 12/13/2001
-C166(WI) (0402)
40001-DGC-3

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

24. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

25. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

26. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

27. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the state of Wisconsin, except that repossession will be governed, to the extent permitted by Wis. Stat. Section 421.201(5), as amended, by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed from the remaining provisions to the extent not prohibited by the Wisconsin Consumer Act and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

28. **NOTICE.** Any statutorily required notice may be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to the last address furnished to Lender by Mortgagor. Such a notice may be sent to only one address if all parties reside at that address and the notice is addressed to each party or, if required by Wis. Banking Rule 80.37, any party who resides at a different address shall be sent a separate notice.

29. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

30. **MORTGAGOR'S COPY.** Mortgagor shall be furnished an exact copy of the Note and of this Security Instrument at the time of execution.

31. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

[X] **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until Lender has terminated all commitments for future advances.

[ ] **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

[ ] **Additional Terms.**

---

**FOR WISCONSIN RESIDENTS ONLY:**

The Secured Debt is incurred in the interest of undersigned Mortgagors' marriages or families.

*Rhonda S Blotzer* [Seal]
(Signature)                              (Date) 6·24·05
RHONDA S BLOTZER

*Christopher J Blotzer* [Seal]
(Signature)                              6-24-05 (Date)
CHRISTOPHER J BLOTZER

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

---

**NOTICE TO CUSTOMER**

(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON ALL PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS IF IT CONTAINS BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

*Christopher J Blotzer* [Seal]            *Rhonda S Blotzer* [Seal]
(Signature) CHRISTOPHER J BLOTZER  6-24-05 (Date)    (Signature) RHONDA S BLOTZER  6·24·05 (Date)

---

**ACKNOWLEDGMENT:**

(Individual)   STATE OF Wisconsin ........................., COUNTY OF Fond du Lac } ss.

This instrument was acknowledged before me this 24 day of June, 2005

by .CHRISTOPHE J BLOTZER AND RHONDA S BLOTZER, HUSBAND AND WIFE

My commission expires: March 23, 2008

(Seal)                                  *Theresa Abitz* (Notary Public)

Theresa Abitz

The instrument was drafted by .. Theresa Abitz                                         (name).

Experè © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-WI 12/13/2001
C-166(WI) (0402)
40001-DGC-4

(page 4 of 4)

EXHIBIT A


SITUATED IN THE COUNTY OF DODGE AND STATE OF WISCONSIN:

A PARCEL OF LAND BEING LOT 15 OF EAST VIEW ESTATES TO THE
CITY OF WAUPUN, DODGE COUNTY, WISCONSIN, ACCORDING TO THE
PLAT THEREOF AS RECORDED IN THE OFFICE OF THE REGISTER OF
DEEDS, IN AND FOR DODGE COUNTY, WISCONSIN.


Permanent Parcel Number:  292-1315-0922-025
CHRISTOPHER J. BLOTZER AND RHONDA S. BLOTZER,
HUSBAND AND WIFE

717 SUNRISE AVENUE, WAUPUN WI 53963
Loan Reference Number  :  0506228651
First American Order No:  7611842
Identifier: ELS



REGISTER OF DEEDS (Production Envir.)

_INK

About | Hello, CPLANASCH | Log Out

| | | Inquiry | | | |

Document Display

*Search by Legal Description*

*Search by Legal Description*

Clear Checkboxes
Search Criteria

uments

22 documents of 22 total items.
umn header to sort the current page. [1]

| | Inst. Code | Instrument | Recorded Date | Grantors | Grantees | Voided | Legal | Legal Description |
|---|---|---|---|---|---|---|---|---|
| ✓ | WAR | DEED-WARRANTY | 08/12/2002 | VANDEZANDE DONNA M | BLOTZER CHRISTOPHER J* | | EAST VIEW ESTATES C | Lot 15/Block |
| ✓ | MTG | MORTGAGE | 05/29/2002 | BLOTZER CHRISTOPHER J* | FIRST FEDERAL SAVINGS BANK LACROSSE | | EAST VIEW ESTATES C | Lot 15/Block |
| ✓ | MTG | MORTGAGE | 05/29/2002 | BLOTZER CHRISTOPHER J* | FIRST FEDERAL SAVINGS BANK LACROSSE | | EAST VIEW ESTATES C | Lot 15/Block |
| ✓ | MTG | MORTGAGE | 10/09/2002 | BLOTZER CHRISTOPHER J* | FIRST FEDERAL SAVINGS BANK LACROSSE | | EAST VIEW ESTATES C | Lot 15/Block |
| ✓ | SUB | SUBORDINATION | 10/09/2002 | FIRST FEDERAL SAVINGS BANK LACROSSE | FIRST FEDERAL SAVINGS BANK LACROSSE | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | SAT | SATISFACTION | 06/04/2004 | FIRST FEDERAL CAPITAL BANK | BLOTZER CHRISTOPHER J* | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | MTG | MORTGAGE | 07/27/2005 | BLOTZER CHRISTOPHER J* | ASSOCIATED BANK | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | AMN | AMENDMENT | 11/28/2005 | BLOTZER CHRISTOPHER J* | ASSOCIATED BANK | | EAST VIEW ESTATES C | Lot 15/Block |
| ✓ | MOD | MODIFICATION | 10/19/2006 | BLOTZER CHRISTOPHER J* | ASSOCIATED BANK | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | ASG | ASSIGNMENT | 06/18/2007 | ASSOCIATED BANK NA | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | AFF | AFFIDAVIT | 08/17/2007 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | NONE | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | SAT | SATISFACTION | 12/04/2007 | WI PARTNERSHIP HOUSING DEVELOPMENT INC | BLOTZER CHRISTOPHER J* | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | COR | CORRECTION INSTRUMENT | 02/12/2016 | BLOTZER CHRISTOPHER J* | ASSOCIATED BANK | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | COR | CORRECTION INSTRUMENT | 02/12/2016 | BLOTZER CHRISTOPHER J* | ASSOCIATED BANK | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | ASG | ASSIGNMENT | 02/17/2016 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC* | COLONIAL SAVINGS FA | | EAST VIEW ESTATES C | Lot 15/Block |
| ✓ | LP | LIS PENDENS | 03/15/2016 | COLONIAL SAVINGS FA | BLOTZER CHRISTOPHER J* | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | LP | LIS PENDENS | 04/20/2016 | ASSOCIATED BANK NA | BLOTZER CHRISTOPHER J* | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | RELLP | LIS PENDENS-RELEASE OF | 07/13/2016 | COLONIAL SAVINGS FA | BLOTZER CHRISTOPHER J* | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | LP | LIS PENDENS | 07/29/2016 | COLONIAL SAVINGS FA | BLOTZER CHRISTOPHER J* | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | ASG | ASSIGNMENT | 10/23/2018 | COLONIAL SAVING FA | ASSOCIATED BANK NA | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | ASG | ASSIGNMENT | 04/09/2019 | COLONIAL SAVINGS F A | ASSOCIATED BANK NA | | EAST VIEW ESTATES C ... | Lot 15/Block |
| ✓ | SAT | SATISFACTION | 09/04/2019 | ASSOCIATED BANK NA | BLOTZER CHRISTOPHER J* | | EAST VIEW ESTATES C ... | Lot 15/Block |

ultiple grantors/grantees and/or multiple legals

rodlandlink.co.dodge.wi.us/lrmpi/searchByGrantoree.lrm

## Document Display

**Inquiry**
- Address
- Batch ID
- Book/Volume/Page
- Check Number
- Daily Page Count
- Document Number
- Fee History
- Grantor/Grantee
- LandScan Statistical
- Parcel ID
- Plat Numbers/Titles
- Reception Date
- Recorded Metrics
- Returned Docs
- Related Docs
- Specific Doc Type
- Tract Index

**Recording Status**

Index Begin: 04/01/1987
Posted Through: 02/14/2023
Verified Through: 02/14/2023
Image Begin: 05/14/2012
Image Through: 02/14/2023

Clear Checkboxes

[ View Documents ]

*Search by Grantee*

Displaying 16 documents of 16 total items. [1]

| All | Doc # | Name | Gtr/Gte | Inst. Code | Instrument | Recorded Date | Reference Doc # | Voided | Legal Description |
|-----|-------|------|---------|-----------|------------|---------------|-----------------|--------|-------------------|
| ☐ | 931920 | BLOTZER CHRISTOPHER J | GTE* | WAR | DEED-WARRANTY | 06/12/2001 | | | EAST VIEW ESTATES C … |
| ☐ | 958228 | BLOTZER CHRISTOPHER J | GTR* | MTG | MORTGAGE | 05/29/2002 | 1023550 | | EAST VIEW ESTATES C … |
| ☐ | 958229 | BLOTZER CHRISTOPHER J | GTR* | MTG | MORTGAGE | 05/29/2002 | * 967998 | | EAST VIEW ESTATES C … |
| ☐ | 967997 | BLOTZER CHRISTOPHER J | GTR* | MTG | MORTGAGE | 10/09/2002 | * 1091993 | | EAST VIEW ESTATES C … |
| ☐ | 1023550 | BLOTZER CHRISTOPHER J | GTE* | SAT | SATISFACTION | 06/04/2004 | 958228 | | EAST VIEW ESTATES C … |
| ☐ | 1051046 | BLOTZER CHRISTOPHER J | GTR* | MTG | MORTGAGE | 07/27/2005 | * 1233170 | | EAST VIEW ESTATES C … |
| ☐ | 1099323 | BLOTZER CHRISTOPHER J | GTR* | AMN | AMENDMENT | 11/28/2005 | * 1235258 | | EAST VIEW ESTATES C … |
| ☐ | 1078945 | BLOTZER CHRISTOPHER J | GTR* | MOD | MODIFICATION | 10/19/2006 | * 1233170 | | EAST VIEW ESTATES C … |
| ☐ | 1101051 | BLOTZER CHRISTOPHER J | GTE* | SAT | SATISFACTION | 12/04/2007 | 958229 | | EAST VIEW ESTATES C … |
| ☐ | 1233169 | BLOTZER CHRISTOPHER J | GTR* | COR | CORRECTION INSTRUMENT | 02/12/2016 | * 1051046 | | EAST VIEW ESTATES C … |
| ☐ | 1233170 | BLOTZER CHRISTOPHER J | GTR* | COR | CORRECTION INSTRUMENT | 02/12/2016 | * 1078945 | | EAST VIEW ESTATES C … |
| ☐ | 1234116 | BLOTZER CHRISTOPHER J | GTE* | LP | LIS PENDENS | 03/15/2016 | * 967997 | | EAST VIEW ESTATES C … |
| ☐ | 1235258 | BLOTZER CHRISTOPHER J | GTE* | LP | LIS PENDENS | 04/20/2016 | * 1051046 | | EAST VIEW ESTATES C … |
| ☐ | 1238608 | BLOTZER CHRISTOPHER J | GTE* | RELLP | LIS PENDENS-RELEASE OF | 07/13/2016 | 1234116 | | EAST VIEW ESTATES C … |
| ☐ | 1239260 | BLOTZER CHRISTOPHER J | GTE* | LP | LIS PENDENS | 07/29/2016 | 967997 | | EAST VIEW ESTATES C … |
| ☐ | 1229404 | BLOTZER CHRISTOPHER J | GTE* | SAT | SATISFACTION | 09/04/2019 | 967997 | | EAST VIEW ESTATES C … |

* denotes more than one legal description and/or more than one reference document and/or multiple grantors/grantees

**Inquiry**

Address
Batch ID
Book/Volume/Page
Check Number
Daily Page Count
Document Number
Fee History
Grantor/Grantee
LandScan Statistical
Parcel ID
Plat Numbers/Titles
Reception Data
Recorded Metrics
Returned Date
Related Docs
Specific Doc Type
Tract Index

**Recording Status**

Index Begin: 04/01/1987
Posted Through: 02/14/2023
Verified Through: 02/14/2023
Image Begin: 05/14/1924
Image Through: 02/14/2023

## Document Display

[ View Documents ]

Displaying 18 documents of 18 total items [1]

| All | Doc # | Name | StsGts | Inst. Code | Instrument | Recorded Date | Reference Doc # | Voided | Legal Description |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | 931920 | BLOTZER RHONDA S | GTE* | WAR | DEED-WARRANTY | 06/12/2001 | | | EAST VIEW ESTATES C ... |
| ☐ | 959228 | BLOTZER RHONDA S | GTR* | MTG | MORTGAGE | 05/29/2002 | 1022550 | | EAST VIEW ESTATES C ... |
| ☐ | 959229 | BLOTZER RHONDA S | GTR* | MTG | MORTGAGE | 05/29/2002 | * 967998 | | EAST VIEW ESTATES C ... |
| ☐ | 967997 | BLOTZER RHONDA S | GTR* | MTG | MORTGAGE | 10/09/2002 | * 1091983 | | EAST VIEW ESTATES C ... |
| ☐ | 1022550 | BLOTZER RHONDA S | GTE* | SAT | SATISFACTION | 08/04/2004 | 959228 | | EAST VIEW ESTATES C ... |
| ☐ | 1051046 | BLOTZER RHONDA S | GTR* | MTG | MORTGAGE | 07/27/2005 | * 1231170 | | EAST VIEW ESTATES C ... |
| ☐ | 1055321 | BLOTZER RHONDA S | GTR* | AMN | AMENDMENT | 11/28/2005 | * 1235258 | | EAST VIEW ESTATES C ... |
| ☐ | 1078845 | BLOTZER RHONDA S | GTR* | MOD | MODIFICATION | 10/19/2006 | * 1231170 | | EAST VIEW ESTATES C ... |
| ☐ | 1101051 | BLOTZER RHONDA S | GTE* | SAT | SATISFACTION | 12/04/2007 | 959229 | | EAST VIEW ESTATES C ... |
| ☐ | 1231169 | BLOTZER RHONDA S | GTR* | COR | CORRECTION INSTRUMENT | 02/12/2016 | * 1051046 | | EAST VIEW ESTATES C ... |
| ☐ | 1231170 | BLOTZER RHONDA S | GTR* | COR | CORRECTION INSTRUMENT | 02/12/2016 | * 1078845 | | EAST VIEW ESTATES C ... |
| ☐ | 1234116 | BLOTZER RHONDA S | GTE* | LP | LIS PENDENS | 03/15/2016 | * 967997 | | EAST VIEW ESTATES C ... |
| ☐ | 1235258 | BLOTZER RHONDA S | GTE* | LP | LIS PENDENS | 04/20/2016 | * 1051046 | | EAST VIEW ESTATES C ... |
| ☐ | 1238698 | BLOTZER RHONDA S | GTE* | RELLP | LIS PENDENS-RELEASE OF | 07/13/2016 | 1234116 | | EAST VIEW ESTATES C ... |
| ☐ | 1238960 | BLOTZER RHONDA S | GTE* | LP | LIS PENDENS | 07/29/2016 | 967997 | | EAST VIEW ESTATES C ... |
| ☐ | 1279404 | BLOTZER RHONDA S | GTE* | SAT | SATISFACTION | 09/04/2019 | 967997 | | EAST VIEW ESTATES C ... |

* denotes more than one legal description and/or more than one reference document and/or multiple grantors/grantees

Clear Checkboxes

DOCUMENT#: **1233170**
Recorded **02-12-2016** at **10:46:45 AM**
**CHRIS PLANASCH , DODGE CTY REGISTER OF DEEDS**
**DODGE COUNTY , WI**
Fee Amount: **$30.00** Pages: 2

***The above recording information verifies this
document has been electronically recorded and
returned to Stupar and Schuster, S.C.***

State Bar of Wisconsin Form 00-2011
**CORRECTION INSTRUMENT**
Under Wis. Stat. § 706.085

| Document Number | Document Name |

~~...~~ ~~certify that this instrument~~
~~...~~ ~~...original of the~~
~~document of record~~ ~~...~~
This document is **2** pages in length.
Date **FEB 16, 2023**
By _Chris Planasch_
Register of Deeds or ~~Deputy~~
**Dodge County, Wisconsin**

Recording Area

Undersigned hereby states that a certain document ("conveyance") titled as
Home Equity Loan Plan Account Modification _____ (type of document), and
executed between Christopher J. Blotzer and Rhonda S. Blotzer , Grantor, and
Associated Bank, N.A. _____, Grantee, was recorded in Dodge
County, Wisconsin, on October 19 , 2006 , in volume _____, page
_____, as document number 1078945 , and contained the following error:

The modification contained an incorrect mortgage document number

Name and Return Address
Return to: Jeffrey S. Schuster
Stupar, Schuster & Bartell, S.C.
633 W Wisconsin Ave., Suite 1800
Milwaukee, WI 53203

Undersigned makes this Correction Instrument for the purpose of correcting the
conveyance as follows:

To correct the scrivener's error made by listing the mortgage document number
incorrectly as 10510146 instead of the correct document number of 1051046.

292-1315-0922-025
Parcel Identification Number (PIN)

The basis for Undersigned's personal knowledge is (check one):

☐ Undersigned is the Grantor/Grantee of the property described in the conveyance.

☐ Undersigned is the drafter of the conveyance that is the subject of the Correction Instrument

☐ Undersigned is the settlement agent in the transaction that is the subject of this Correction Instrument

☒ Other (Explain):

Authorized Signatory for Associated Bank, N.A.

A copy of the conveyance (in part or whole) ☐ is ☒ is not attached to this Correction Instrument (if a copy of the conveyance is not
attached, attach the legal description).
Undersigned has sent notice of the execution and recording of this Correction Instrument by 1st class mail to all parties to the
transaction that was the subject of the conveyance at their last known addresses.

Dated _____.

_Peter C. Laux_ (SEAL)
* Peter C. Laux, Assistant VP for Associated Bank, N.A

| **AUTHENTICATION** | **ACKNOWLEDGMENT** |

Signature of _____

authenticated on _____

*_____
TITLE: MEMBER STATE BAR OF WISCONSIN
(If not, _____
authorized by Wis. Stat. §706.06)

THIS INSTRUMENT DRAFTED BY:
ANDREW R. HELMINIAK, ESQ.
_____

STATE OF WISCONSIN )
) ss
Portage _____ COUNTY )

Personally came before me on February 9th, 2016
the above-named Peter C. Laux
to me known to be the person who executed the foregoing
instrument and acknowledged the same.

_Kimberly Ristow_
Notary Public, State of Wisconsin
My Commission (is permanent) (expires: 11/19/19 )

(Notary seal: KIMBERLY RISTOW, NOTARY PUBLIC, WISCONSIN)

(Signatures may be authenticated or acknowledged. Both are not necessary.)
NOTE: THIS IS A STANDARD FORM. ANY MODIFICATIONS TO THIS FORM SHOULD BE CLEARLY IDENTIFIED.
**CORRECTION INSTRUMENT**                STATE BAR OF WISCONSIN
* Type name below signatures.                                              **FORM NO. 00-2011**

Lot Fifteen (15) of East View Estates to the City of Waupun, Dodge County, Wisconsin, according to the plat thereof as recorded in the Office of the Register of Deeds in and for Dodge County.

FOR INFORMATIONAL PURPOSES ONLY:
Property Address: 717 Sunrise Avenue, Waupun, WI 53963
Tax Key No.: 292-1315-0922-025

DOCUMENT# 1078945
Office of Register of Deeds
Dodge County, Wisconsin
RECEIVED FOR RECORD
OCT. 19, 2006 AT 11:49AM

15/3

When recorded mail to:
*FIRST AMERICAN TITLE INSURANCE*
*LENDERS ADVANTAGE*
*1228 EUCLID AVENUE, SUITE 400*
*CLEVELAND, OHIO 44115*
*ATTN. NATIONAL RECORDINGS*

*Chris Planasch*

CHRIS PLANASCH - Registrar
Fee Amount:    $15.00

## HOME EQUITY LOAN PLAN
## ACCOUNT MODIFICATION

*10409602*

Space above this line for recording data

Application #_0609158387_____    Account #_0004009293770200594_____

Tax Parcel Identifier Number 292-1315-0922-025_____

THIS AGREEMENT is made by and between _CHRISTOPHER J BLOTZER AND RHONDA S BLOTZER, as husband and wife____
_____
_____

000281

And Associated Bank, for the purpose described below.

A.   You established a Home Equity Loan Plan with Associated Bank on _06/24/05_____.   Your
     account is evidenced in part by the following documents:
     1)   A Home Equity Loan Account Agreement;
     2)   A Mortgage Note; and
     3)   A Real Estate Mortgage.

B.   Your Account specified a credit limit of $____30,000.00_____, which is also the amount of the
     Mortgage Note and Real Estate Mortgage.  You have requested Associated Bank to increase your
     credit limit in the amount of $____44,000.00____ which has been approved.

C.   This Modification Agreement increases the mortgage amount on the real estate described more fully in the
     Real Estate Mortgage, which was recorded in the Office of the Register of Deeds for _Dodge_____
     County on _07/27/05____ in Reel/Volume Number _____, Image/Page Number _0_____,
     as Document Number _10510146_____.
**See attached legal description**

## AGREEMENT

The above referenced Borrower(s) and Associated Bank therefore mutually agree as follows:

1.   Your Equity Loan Plan Account Agreement, Mortgage Note, and Real Estate Mortgage described
     above is modified to provide for a credit limit of $____74,000.00____ which will be your new
     credit limit, and the amount of your Mortgage Note and Real Estate Mortgage is increased to an
     amount equal to the new credit limit.

40020-DLC-1 (12/02/2005)

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office
This document is _3_ pages in length.
Date _FEB 16, 2023_
By _Chris Planasch_
Register of Deeds or Deputy
Dodge County, Wisconsin

2. The principal amount referenced in the Real Estate Mortgage securing the Equity Loan Plan Account and Mortgage Note # 0004009293770200594 is increased to an amount equal to the modified credit limit. Any reference to the amount of the mortgage in the Real Estate Mortgage securing this Equity Loan Plan Agreement and Mortgage Note shall equal the modified credit limit pursuant to this Modification Agreement.

3. All other terms and conditions of the Equity Loan Plan Account Agreement and Mortgage Note and Real Estate Mortgage remain the same and are not affected by the modification.

4. Notwithstanding the foregoing, you will not make and we will not be obligated to honor any purchases or cash advances in excess of your old credit limit until any rescission period applicable to the increase in your credit limit, according to this Modification, has expired, and we are reasonably satisfied that no person with the right to rescind the amount of the increased credit limit has done so.

Each person who has signed below acknowledges receiving an exact copy of this Agreement. The undersigned acknowledges receipt of an exact and completed copy of the Mortgage.

Signed and Sealed this  25  day of  September  ,  2006  .

_____ (SEAL)          _____ (SEAL)
* CHRISTOPHER J BLOTZER                          * RHONDA S BLOTZER

_____ (SEAL)          _____ (SEAL)
*                                                *

This instrument was drafted by rebecca hanson                .
After recording, return to:  Associated Bank, 1305 Main Street, P. O. Box 226, Stevens Point, WI 54481
*Type or print name signed above.

## ACKNOWLEDGEMENT

STATE OF  Wisconsin  )
                      ) SS
   Fond du Lac  County)

I, the undersigned, a Notary Public in and for said county, in the State aforesaid, DO HEREBY CERTIFY THAT _____
CHRISTOPHER J BLOTZER AND RHONDA S BLOTZER, as husband and wife

Personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument appeared before me this day in person, and acknowledged that he/she/they signed, sealed and delivered the said instrument as his/her/their free and voluntary act for the uses and purpose therein, set forth, including the release and waiver of the right of homestead.

Given under my hand and official seal this  25  day of  September  ,  2006  .

_____
        (Notary Public)

* STEVEN J LEAMAN

Commission Expires:  May 6, 2007

NOTARY PUBLIC
STEVEN J. LEAMAN
STATE OF WISCONSIN

40020-DLC-2 (07/01/2004)

## EXHIBIT "A"

### LEGAL DESCRIPTION

A PARCEL OF LAND SITUATED IN THE STATE OF WISCONSIN, COUNTY OF
DODGE, WITH A STREET LOCATION ADDRESS OF 717 SUNRISE AVE; WAUPUN,
WI 53963 CURRENTLY OWNED BY CHRISTOPHE J BLOTZER AND RHONDA S
BLOTZER HAVING A TAX IDENTIFICATION NUMBER OF 292-1315-0922-025
AND FURTHER DESCRIBED AS LOT 15 EAST VIEW ESTATES.

292-1315-0922-025
717 SUNRISE AVE; WAUPUN, WI 53963

0609158387
30183871/f

BLOTZER
10409602

FIRST AMERICAN LENDERS ADVANTAGE
MODIFICATION AGREEMENT

State Bar of Wisconsin Form 00-2011
## CORRECTION INSTRUMENT
Under Wis. Stat. § 706.085

| Document Number | Document Name |

DOCUMENT#: **1233169**
Recorded 02-12-2016 at **10:46:45 AM**
**CHRIS PLANASCH , DODGE CTY REGISTER OF DEEDS**
**DODGE COUNTY , WI**
Fee Amount: **$30.00**   Pages: **2**

***The above recording information verifies this document has been electronically recorded and returned to Stupar and Schuster, S.C.***

**Undersigned** hereby states that a certain document ("conveyance") titled as Home Equity Loan Plan Account Modification (type of document), and executed between Christopher J. Blotzer and Rhonda S. Blotzer , Grantor, and Associated Bank, N.A. , Grantee, was recorded in Dodge County, Wisconsin, on November 28 , 2005 , in volume _____ , page _____ , as document number 1059323 , and contained the following error:

The modification contained an incorrect mortgage document number

Undersigned makes this Correction Instrument for the purpose of correcting the conveyance as follows:

To correct the scrivener's error made by listing the mortgage document number incorrectly as 10510146 instead of the correct document number of 1051046.

The basis for Undersigned's personal knowledge is (check one):

☐ Undersigned is the Grantor/Grantee of the property described in the conveyance.

☐ Undersigned is the drafter of the conveyance that is the subject of the Correction Instrument

☐ Undersigned is the settlement agent in the transaction that is the subject of this Correction Instrument

☒ Other (Explain):

Authorized Signatory for Associated Bank, N.A.

hereby certify that this instrument is a true and correct copy of the document of record in my office. This document is 2 pages in length.
Date FEB 16, 2023
By Chris Planasch
Register of Deeds or Deputy
Dodge County, Wisconsin

Recording Area

Name and Return Address
Return to: Jeffrey S. Schuster
Stupar, Schuster & Bartell, S.C.
633 W Wisconsin Ave., Suite 1800
Milwaukee, WI 53203

292-1315-0922-025
Parcel Identification Number (PIN)

A copy of the conveyance (in part or whole) ☐ is ☒ is not attached to this Correction Instrument (if a copy of the conveyance is not attached, attach the legal description).

Undersigned has sent notice of the execution and recording of this Correction Instrument by 1st class mail to all parties to the transaction that was the subject of the conveyance at their last known addresses.

Dated _____.

Peter C Laux                                    (SEAL)
* Peter C. Laux, Assistant VP for Associated Bank, N.A

| **AUTHENTICATION** | **ACKNOWLEDGMENT** |
|---|---|

Signature of _____

authenticated on _____ ,

_____
TITLE: MEMBER STATE BAR OF WISCONSIN
(If not,
authorized by Wis. Stat. §706.06)

THIS INSTRUMENT DRAFTED BY:
ANDREW R. HELMINIAK, ESQ.

STATE OF WISCONSIN     )
                       ) ss
Portage     COUNTY  )

Personally came before me on February 9th, 2016 the above-named Peter C Laux to me known to be the person who executed the foregoing instrument and acknowledged the same.

_____
Kimberly Ristow
Notary Public, State of Wisconsin
My Commission (is permanent) (expires: 11/9/19 )

(Signatures may be authenticated or acknowledged. Both are not necessary.)

NOTE: THIS IS A STANDARD FORM. ANY MODIFICATIONS TO THIS FORM SHOULD BE CLEARLY IDENTIFIED.

CORRECTION INSTRUMENT                                    FORM NO. 00-2011
* Type name below signatures.

Lot Fifteen (15) of East View Estates to the City of Waupun, Dodge County, Wisconsin, according to the plat thereof as recorded in the Office of the Register of Deeds in and for Dodge County.

FOR INFORMATIONAL PURPOSES ONLY:
Property Address: 717 Sunrise Avenue, Waupun, WI 53963
Tax Key No.: 292-1315-0922-025



**\*1059323\***
Document Number
Office of Register of Deeds
Dodge County, Wisconsin
**RECEIVED FOR RECORD**

Nov 28, 2005

at 1:52 o'clock P. M.

*Chris Planasch*
CHRIS PLANASCH - Registrar

When recorded mail to:
*FIRST AMERICAN TITLE INSURANCE*
*1228 EUCLID AVENUE, SUITE 400*
*CLEVELAND, OHIO 44115*
*ATTN: FT1120*

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is 3 pages in length.
Date FEB 16, 2023
By *Chris Planasch*
Register of Deeds or Deputy
Dodge County, Wisconsin

**PREPARED BY: CLINT MCKINLEY, ATTY**

---

Space above this line for recording data

## HOME EQUITY LOAN PLAN ACCOUNT MODIFICATION

Application # ~~~~~~~~~~~~~~~~~~~~~~~~~~            Account # __0004009293770200594__

Tax Parcel Identifier Number __29213150922025__

THIS AGREEMENT is made by and between __CHRISTOPHE J BLOTZER AND RHONDA S BLOTZER, Husband and Wife__

And Associated Bank, for the purpose described below.

A.   You established a Home Equity Loan Plan with Associated Bank on __06/24/05__.   Your
     account is evidenced in part by the following documents:
     1)   A Home Equity Loan Account Agreement;
     2)   A Mortgage Note; and
     3)   A Real Estate Mortgage.

B.   Your Account specified a credit limit of $ __30,000.00__, which is also the amount of the
     Mortgage Note and Real Estate Mortgage.  You have requested Associated Bank to increase your
     credit limit in the amount of $ __20,000.00__ which has been approved.

C.   This Modification Agreement increases the mortgage amount on the real estate described more fully in the
     Real Estate Mortgage, which was recorded in the Office of the Register of Deeds for __Dodge__
     County on __07/27/05__ in Reel/Volume Number _____, Image/Page Number __0__,
     as Document Number __10510146__.

## AGREEMENT

The above referenced Borrower(s) and Associated Bank therefore mutually agree as follows:

1.   Your Equity Loan Plan Account Agreement, Mortgage Note, and Real Estate Mortgage described
     above is modified to provide for a credit limit of $ __50,000.00__ which will be your new
     credit limit, and the amount of your Mortgage Note and Real Estate Mortgage is increased to an
     amount equal to the new credit limit.

40020-DLC-1 (07/01/2004)

2. The principal amount referenced in the Real Estate Mortgage securing the Equity Loan Plan Account and Mortgage Note # 0004009293770200594 is increased to an amount equal to the modified credit limit. Any reference to the amount of the mortgage in the Real Estate Mortgage securing this Equity Loan Plan Agreement and Mortgage Note shall equal the modified credit limit pursuant to this Modification Agreement.

3. All other terms and conditions of the Equity Loan Plan Account Agreement and Mortgage Note and Real Estate Mortgage remain the same and are not affected by the modification.

4. Notwithstanding the foregoing, you will not make and we will not be obligated to honor any purchases or cash advances in excess of your old credit limit until any rescission period applicable to the increase in your credit limit, according to this Modification, has expired, and we are reasonably satisfied that no person with the right to rescind the amount of the increased credit limit has done so.

Each person who has signed below acknowledges receiving an exact copy of this Agreement. The undersigned acknowledges receipt of an exact and completed copy of the Mortgage.

Signed and Sealed this ___31___ day of __October__ , __2005__ .

_____ (SEAL)    _____ (SEAL)

\* CHRISTOPHER J BLOTZER                \* RHONDA S BLOTZER

_____ (SEAL)    _____ (SEAL)

\* _____                \* _____

This instrument was drafted by Theresa Abitz_____ .
After recording, return to: Associated Bank, 1305 Main Street, P. O. Box 226, Stevens Point, WI 54481
\*Type or print name signed above.

### ACKNOWLEDGEMENT

STATE OF _Wisconsin_ )
 ) SS
_Fond du Lac_ County )

I, the undersigned, a Notary Public in and for said county, in the State aforesaid, DO HEREBY CERTIFY THAT _____
CHRISTOPHE J BLOTZER AND RHONDA S BLOTZER. Husband and Wife
Personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument appeared before me this day in person, and acknowledged that he/she/they signed, sealed and delivered the said instrument as his/her/their free and voluntary act for the uses and purpose therein, set forth, including the release and waiver of the right of homestead.

Given under my hand and official seal this ___31___ day of __October__ , __2005__ .

_____
(Notary Public)

\* Theresa Abitz

Commission Expires: March 23, 2008

40020-DLC-2 (07/01/2004)

EXHIBIT A


SITUATED IN THE COUNTY OF DODGE AND STATE OF WISCONSIN:

A PARCEL OF LAND BEING LOT 15 OF EAST VIEW ESTATES TO THE
CITY OF WAUPUN, DODGE COUNTY, WISCONSIN, ACCORDING TO THE
PLAT THEREOF AS RECORDED IN THE OFFICE OF THE REGISTER OF
DEEDS, IN AND FOR DODGE COUNTY, WISCONSIN.

Permanent Parcel Number:  292-1315-0922-025
CHRISTOPHER J. BLOTZER AND RHONDA S. BLOTZER, HUSBAND AND WIFE AS
SURVIVORSHIP MARITAL PROPERTY

717 SUNRISE AVENUE, WAUPUN WI 53963
Loan Reference Number  :  0510137715
First American Order No:  8359856
Identifier: L/FIRST AMERICAN LENDERS ADVANTAGE

| Document Number | **NOTICE OF LIS PENDENS** |
|---|---|
| | Document Name |

STATE OF WISCONSIN
CIRCUIT COURT - CIVIL DIVISION
DODGE COUNTY
Case No. 16-CV-11

--------------------------------------------------------

ASSOCIATED BANK, N.A.,

      Plaintiff,

  vs.

CHRISTOPHER J. BLOTZER;
RHONDA S. BLOTZER;
JOHN KISER;
KISER/ARROW CONSTRUCTION;
UW MEDICAL FOUNDATION, INC. a/k/a
UNIVERSITY OF WISCONSIN MEDICAL FOUNDATION, INC.

      Defendants.

*Lis Pendens has not been released*

DOCUMENT # 1235258

Office of Register of Deeds
Dodge County, Wisconsin
RECEIVED FOR RECORD

April 20, 2016 11:00 AM

CHRIS PLANASCH - Registrar
Fee Amount: $30.00
# of Pages 1

Recording Area

**Return to:** Jeffrey S. Schuster, Esq.
633 W. Wisconsin Ave., #1800
Milwaukee, WI 53203

**Tax Key No. 292-1315-0922-025**

------------------------------------------------------------

    NOTICE IS HEREBY GIVEN that an action has been commenced and is pending in the above-named Court, upon a Complaint of the above-named plaintiff against the above-named defendants; that the object of said action is to foreclose a mortgage dated June 24, 2005, and recorded in the office of the Register of Deeds for the above county on July 27, 2005, Document No. 1051046, a modification of mortgage dated October 31, 2005, and recorded in the office of the Register of Deeds for the above county on November 28, 2005, Document No. 1059323 and a modification of mortgage dated September 25, 2006, and recorded in the office of the Register of Deeds for the above county on October 19, 2006, Document No. 1078945 executed by Christopher J. Blotzer and Rhonda S. Blotzer to Associated Bank, N.A; that said action affects the title to the real estate described below situated in this county.

Lot Fifteen (15) of East View Estates to the City of Waupun, Dodge County, Wisconsin, according to the plat thereof as recorded in the Office of the Register of Deeds in and for Dodge County.

FOR INFORMATIONAL PURPOSES ONLY:
Property Address: 717 Sunrise Avenue, Waupun, WI 53963

    Dated this 13th day of April, 2016.

        STUPAR, SCHUSTER & BARTELL, S.C.
        Attorneys for Plaintiff

        By:_____
           Andrew R. Helminiak
           State Bar No. 1064870

DRAFTED BY:
Andrew R. Helminiak, Esq.

hereby certify that this instrument
is a true and correct copy of the
document of record in my office
This document is ___ pages in length
Date FEB 16, 2023
By _____
Register of Deeds or Deputy
Dodge County, Wisconsin

VOL **1144** PAGE **977**

WARRANTY DEED

Document Number:

**931920**

Office of Register of Deeds
Dodge County, WI
RECEIVED FOR RECORD

JUN 12 2001

at *10:58* o'clock *a* M.

CHRIS PLANASCH - Registrar

Return Address: Nugent & Nugent, S. C., P. O. Box 231, Waupun, WI 53963

Parcel ID Number: 292-1315-0922-025

**TRANSFER FEE**

**$ *54 °°***

THIS WARRANTY DEED is between, DONNA M. VANDE ZANDE, a single person ("the Grantor," whether one or more) and CHRISTOPHER J. BLOTZER and RHONDA S. BLOTZER, Husband and Wife as survivorship ("the Grantee," whether one or more). marital property

The Grantor, for value received, conveys to the Grantee, the following real estate in the State of Wisconsin ("the property"), legally described as follows:

Lot Fifteen (15) of East View Estates to the City of Waupun, Dodge County, Wisconsin, according to the plat thereof as recorded in the Office of the Register of Deeds, in and for Dodge County, Wisconsin.

This is not homestead property.

The Grantor warrants that title is good, indefeasible in fee simple and free and clear of encumbrances and will warrant and defend the same, except for the operation of zoning and municipal ordinances, easements, restrictions and rights of way of record, building restrictions and covenants of record, and matters which would be disclosed by a survey of the real estate.

Dated this *8th* day of May, 2001.

*Donna M. Vande Zande*

DONNA M. VANDE ZANDE - Grantor

STATE OF WISCONSIN)
                                    ) ss:
FOND DU LAC COUNTY)

Personally came before me on this date the above-named, DONNA M. VANDE ZANDE, to me known to be the person who executed this Warranty Deed and acknowledged the same.

*Rosemary Heidemann*

Rosemary Heideman
Notary Public, Fond du Lac County, Wisconsin
My commission expires: 2-06-2005

This Warranty Deed was drafted by Attorney Daniel L. Vande Zande.

I hereby certify that this instrument is a true and correct copy of the document of record in my office. This document is *1* pages in length.
Date *FEB 16, 2023*
By *Chris G. Planasch*
Register of Deeds or Deputy
Dodge County, Wisconsin

RECORDING REQUESTED BY:
**ASSOCIATED BANK**
**LOAN SERVICES/PAYOFFS**
**1305 MAIN ST**
**STEVENS POINT WI 54481**
AND WHEN RECORDED MAIL TO:
**ASSOCIATED BANK**
**LOAN SERVICES/PAYOFFS**
**1305 MAIN ST**
**STEVENS POINT, WI 54481**
Loan #: 0112517981

DOCUMENT#: **1279404**

Recorded: **09-04-2019** at **08:20 AM**
CHRIS PLANASCH, REGISTER OF DEEDS

*Chris Planasch*

**DODGE COUNTY , WI**
Fee Amount: **$30.00**     Pages: **1**

***The above recording information verifies this
document has been electronically recorded and
Returned to: ASSOCIATED BANK***

---

## MORTGAGE RELEASE SATISFACTION AND DISCHARGE

Parcel Tax ID: 29213150922025

IN CONSIDERATION of the payment and full satisfaction of all indebtedness secured by that certain Mortgage described below,
**ASSOCIATED BANK N A** mortgagee of said mortgage does hereby release, satisfy, and discharge said Mortgage in full and does
hereby consent that the same be canceled and discharged of record.

Borrower(s): **CHRISTOPHER J BLOTZER AND RHONDA S BLOTZER, HUSBAND AND WIFE**
Original Mortgagee: **FIRST FEDERAL SAVINGS BANK LACROSSE - MADISON**
Amount of Note: **$99,000.00**
Date of Mortgage: **10/04/2002** Recording Date: **10/09/2002** Instrument No: **967997** Book: **1282** Page: **465**
Legal: **LOT 15, OF EAST VIEW ESTATES TO THE CITY OF WAUPUN, DODGE COUNTY, WISCONSIN, ACCORDING TO THE
PLAT THEREOF RECORDED IN THE OFFICE OF THE REGISTER OF DEEDS, IN AND FOR DODGE COUNTY, WISCONSIN.**

and recorded in the official records of **Dodge** County, State of **WI** affecting Real Property and more particular, described on said
Mortgage referred to herein.
IN WITNESS WHEREOF, the undersigned has caused these presents to be executed on this date of **09/03/2019.**

**ASSOCIATED BANK, N.A.**

---
Name: **CAITLIN LUTZ**
Title: **AVP, LOAN SERVICING SUPERVISOR II**

STATE OF **WISCONSIN**
COUNTY OF **PORTAGE** } s.s.

This instrument was acknowledged before me on **09/03/2019**, by **CAITLIN LUTZ, AVP, LOAN SERVICING SUPERVISOR II** of
**ASSOCIATED BANK, N.A.**.

Witness my hand and official seal.

---
Notary Public: **STACEY SWIFT**
My Commission Expires:
**01/16/2023**

Drafted By: **PAM SULLIVAN**

*Mtg Doc # 967997
is satisfied, but
2nd Lis Pendens has
not been released.*

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is _1_ pages in length.
Date **FEB 16 2023**
By *Chris Planasch*
Register of Deeds
Dodge County, Wisconsin

RELEASE OF LIS PENDENS
STATE OF WISCONSIN
CIRCUIT COURT : DODGE COUNTY

DOCUMENT#: **1238608**
Recorded **07-13-2016** at **08:44:01 AM**
**CHRIS PLANASCH , DODGE CTY REGISTER OF DEEDS**
**DODGE COUNTY , WI**
Fee Amount: **$30.00**    Pages: 1

***The above recording information verifies this
document has been electronically recorded and
returned to **Kohner, Mann and Kailas, S.C. - F/C Departm**

CASE NO. 16-CV-129

COLONIAL SAVINGS, F.A.,

       Plaintiff,

vs.

CHRISTOPHER J. BLOTZER;
RHONDA S. BLOTZER;
ASSOCIATED BANK, NATIONAL ASSOCIATION;
JOHN L. KISER and
KISER/ARROW CONSTRUCTION;
UNIVERSITY OF WISCONSIN MEDICAL FOUNDATION, INC. a/k/a
UW MEDICAL FOUNDATION, INC.;

       Defendants.

Drafted by and Return to:
Attorney Christopher C. Shattuck
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Road
Milwaukee, Wisconsin 53212-1059
Telephone: (414) 962-5110
Parcel ID No. 292 1315 0922 025

Plaintiff in the above-entitled action against Defendants, does hereby release the lis pendens that was

recorded on 03/15/2016, as Document Number 1234116 in the Register of Deeds for the County of DODGE

against the following described real estate situated in DODGE County, Wisconsin.

Lot Fifteen (15) of East View Estates to the City of Waupun, Dodge County, Wisconsin, according to
the plat thereof as recorded in the Office of the Register of Deeds, in and for Dodge County,
Wisconsin.

Dated this 13th day of July, 2016.

KOHNER, MANN & KAILAS, S.C.
Attorneys for Plaintiff

Christopher C. Shattuck – 1078900
cshattuck@kmksc.com

Post Office Address:
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Road
Milwaukee, Wisconsin 53212-1059
Telephone: (414) 962-5110
Facsimile: (414) 962-8725

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office
This document is _1_ pages in length
Date _FEB 16 2023_
By _Chris Planasch_
Register of Deeds of
Dodge County, Wisconsin

KMK File: 010745a

DOCUMENT # 1234116

Office of Register of Deeds
Dodge County, Wisconsin
RECEIVED FOR RECORD

March 15, 2016 10:53 AM

CHRIS PLANASCH - Registrar
Fee Amount: $30.00
# of Pages 1

LIS PENDENS
STATE OF WISCONSIN
CIRCUIT COURT : DODGE COUNTY

Case Number: 16CV129

COLONIAL SAVINGS, F.A.

     Plaintiff,

  vs.

CHRISTOPHER J. BLOTZER;
RHONDA S. BLOTZER;
ASSOCIATED BANK, NATIONAL ASSOCIATION;
JOHN L. KISER and
KISER/ARROW CONSTRUCTION;
UNIVERSITY OF WISCONSIN MEDICAL FOUNDATION, INC. a/k/a
UW MEDICAL FOUNDATION, INC.;

     Defendants.

Drafted by and Return to:
Attorney Janine L. Collette
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Road
Milwaukee, Wisconsin 53212-1059
Parcel ID No. 292 1315 0922 025

    PLEASE TAKE NOTICE that an action has been commenced and is now pending in the above-named Court, in favor of the above-named Plaintiff and against the above-named Defendants; that the object of said action is to foreclose a certain Real Estate Mortgage recorded in the Office of the Register of Deeds for this County on 10/09/2002 in Volume 1282, on Page 465, as Document Number 967997.

    That said Mortgage affects the following described premises, lying and being in DODGE COUNTY, Wisconsin:

Lot Fifteen (15) of East View Estates to the City of Waupun, Dodge County, Wisconsin, according to the plat thereof as recorded in the Office of the Register of Deeds, in and for Dodge County, Wisconsin.

    Dated this 10th day of March, 2016.

KOHNER, MANN & KAILAS, S.C.
Attorneys for Plaintiff

BY: Janine L. Collette – 1063934
jcollette@kmksc.com

Post Office Address:
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Road
Milwaukee, Wisconsin 53212-1059
Telephone: (414) 962-5110
Facsimile: (414) 962-8725

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is ___ pages in length.
Date FEB 16 2023
By _____
Register of Deeds or Deputy
Dodge County, Wisconsin

Case 17-29213-kmp    Doc 81    Filed 03/03/23    Page 41 of 68

KMK FILE: B006-4506

**DOCUMENT # 1239260**

Office of Register of Deeds
Dodge County, Wisconsin
RECEIVED FOR RECORD

July 29, 2016 10:59 AM

CHRIS PLANASCH - Registrar
Fee Amount: $30.00
# of Pages 1

020

LIS PENDENS

STATE OF WISCONSIN

CIRCUIT COURT  :  DODGE COUNTY

COLONIAL SAVINGS, F.A.

Plaintiff,

vs.

Case Number:

CHRISTOPHER J. BLOTZER,
RHONDA S. BLOTZER,
ASSOCIATED BANK, NATIONAL ASSOCIATION,
JOHN L. KISER and
KISER/ARROW CONSTRUCTION,
UNIVERSITY OF WISCONSIN MEDICAL FOUNDATION, INC. a/k/a
UW MEDICAL FOUNDATION, INC.

Defendants.

Drafted by and Return to:
Attorney Janine L. Collette
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Road
Milwaukee, Wisconsin 53212-1059
Parcel ID No. 292 1315 0922 025

PLEASE TAKE NOTICE that an action has been commenced and is now pending in the above-named Court, in favor of the above-named Plaintiff and against the above-named Defendants; that the object of said action is to foreclose a certain Real Estate Mortgage recorded in the Office of the Register of Deeds for this County on 10/09/2002 in Volume 1282, on Page 465, as Document Number 967997.

That said Mortgage affects the following described premises, lying and being in DODGE County, Wisconsin:

Lot Fifteen (15) of East View Estates to the City of Waupun, Dodge County, Wisconsin, according to the plat thereof as recorded in the Office of the Register of Deeds, in and for Dodge County, Wisconsin.

Dated this 22nd day of July, 2016.

KOHNER, MANN & KAILAS, S.C.
Attorneys for Plaintiff

BY: Janine L. Collette – 1063934
jcollette@kmksc.com

Post Office Address:
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Road
Milwaukee, Wisconsin 53212-1059
Telephone: (414) 962-5110
Facsimile: (414) 962-8725

I hereby certify that this instrument
is a true and correct copy of the
a document of record in my office.
This document is _1_ pages in length.
Date _FEB 16 2023_
By _____
Register of Deeds of Dodge County, Wisconsin
Dodge County, Wisconsin

**ASSIGNMENT OF MORTGAGE**

| Document Number | Document Name |
|---|---|

DOCUMENT#: **1233307**
Recorded **02-17-2016** at **01:37:23 PM**
CHRIS PLANASCH , DODGE CTY REGISTER OF DEEDS
DODGE COUNTY , WI
Fee Amount: **$30.00**     Pages: 1

***The above recording information verifies this
document has been electronically recorded and
returned to **Kohner, Mann and Kailas, S.C. - F/C Departm**

THIS FORM CONFORMS TO WIS. STAT. Sec. 59.43(2m)

Dodge County, Wisconsin

MERS #: 100029000310040014     MERS Phone #: 1-888-679-6377

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc.,
Its Successors and Assigns, ("MERS"), which has its address at P.O. Box 2026,
Flint, MI  48501-2026, does hereby assign and transfer to COLONIAL
SAVINGS, F.A., at 2626 West Freeway, Fort Worth, TX 76102, all its right,
title, and interest in and to a certain mortgage executed by Christopher J.
Blotzer and Rhonda S. Blotzer, husband and wife, to First Federal Savings
Bank LaCrosse - Madison, and dated October 4, 2002 and recorded 10/09/2002
in the Office of the Register of Deeds of Dodge County, Wisconsin, as
Document No. 967997, Volume 1282, Image 465.

Property Address: 717 Sunrise Avenue, Waupun, WI 53963

Legal Description:  Lot Fifteen (15) of East View Estates to the City of
Waupun, Dodge County, Wisconsin, according to the plat thereof as recorded
in the Office of the Register of Deeds, in and for Dodge County, Wisconsin.

Parcel ID No.: 292 1315 0922 025

Date of Assignment: FEBRUARY ___10___, 2016

ASSIGNOR:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ITS SUCCESSORS AND ASSIGNS

_Jane Larkin_
Jane Larkin
Assistant Secretary

**Recording Area**

Name and Return Address
Atty. Janine L. Collette
Kohner, Mann & Kailas, S.C.
4650 North Port Washington Road
Milwaukee, WI 53212

292 1315 0922 025
Parcel Identification Number (PIN):

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is  1  pages in length.
Date  FEB 1 6 2023
By  _Chris Planasch_
Register of Deeds or Deputy
Dodge County, Wisconsin

**ACKNOWLEDGMENT**

STATE OF TEXAS          )
                        ) ss.
TARRANT COUNTY          )

Personally came before me on FEBRUARY ___10___, 2016.

The above-named ___Jane Larkin___

To me known to be the person who executed the foregoing
instrument and acknowledge the same.

_Colette Brear Romero_

Notary Public, State of Texas
My Commission expires: 09/21/2016

COLETTE BREA ROMERO
Notary Public
STATE OF TEXAS
My Comm. Exp. Sept. 21, 2016

Prepared By: Janine L. Collette, Esq., Kohner, Mann & Kailas, S.C., 4650 N. Port Washington Road, Milwaukee, WI 53212

10006296

# ASSIGNMENT

Document Number

When Recorded Return To:
THERESA BOOTH
RICHMOND MONROE GROUP
PO BOX 458
KIMBERLING CITY, MO 65686

CHRIS PLANASCH – Registrar
Fee Amount:        $11.00

Parcel ID No. 292-1315-0922-025

THIS IS A STYLE "B" FORM UNDER WIS ACT 110 WITH 3X3 SPACE IN UPPER RIGHT CORNER
Dodge, Wisconsin    SELLER'S SERVICING #: 0097118746    "BLOTZER"
INVESTOR #: 396557
MERS #: 1000290003 10040000

121

Assignor: Associated Bank, National Association, as successor by merger to First Federal Capital Bank, formerly known as First Federal Savings Bank of La Crosse-Madison by amendment to articles at 1305 MAIN STREET, STEVENS POINT, WI 54481
Assignee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ITS SUCCESSORS AND ASSIGNS at P.O BOX 2026, FLINT, MI 48501-2026

Executed By: CHRISTOPHER J BLOTZER AND RHONDA S. BLOTZER, HUSBAND AND WIFE  To: FIRST FEDERAL SAVINGS BANK LACROSSE- MADISON
Date of Mortgage: 10/04/2002 Recorded: 10/09/2002 in Book/Reel/Liber: 1282 Page/Folio: 465 as Instrument No.: 967997 In Dodge, Wisconsin

Property Address: 717 SUNRISE AVE, WAUPUN, WI 53963-9664

Legal: LOT 15, OF EAST VIEW ESTATES TO THE CITY OF WAUPUN, DODGE COUNTY, WISCONSIN, ACCORDING TO THE PLAT THEREOF RECORDED IN THE OFFICE OF THE REGISTER OF DEEDS, IN AND FOR DODGE COUNTY, WISCONSIN.

For and in consideration of the sum of TEN and NO/100ths DOLLARS and other good valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and assign, set over and deliver unto Assignee all beneficial interest in and to title to said Mortgage, together with the note and all other liens against said property securing the payment thereof, and all title held by the undersigned in and to said land.
TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

Associated Bank, National Association, as successor by merger to First Federal Capital Bank, formerly known as First Federal Savings Bank of La Crosse-Madison by amendment to articles
On June 11th, 2007

By: _D. Gregory_
D. Gregory, Vice President

STATE OF MISSOURI
COUNTY OF Stone

ON June 11th, 2007, before me, DELORES D. SMITH, a Notary Public in and for the County of Stone County, State of Missouri, personally appeared D. Gregory, Vice President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Delores D. Smith_
DELORES D. SMITH
Notary Expires: 04/24/2009  #05413232
(This area for notarial seal)

DELORES D. SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Stone County – Comm.#05413232
My Commission Expires April 24, 2009

Prepared By:  Delores Smith, RICHMOND MONROE PO BOX 458, KIMBERLING CITY, MO 65686 417-739-1176

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is __1__ pages in length.
Date    FEB 16 2023
By _Chris Planasch_
Register of Deeds or Deputy
Dodge County, Wisconsin

"KDO*KDOAMRC*06/11/2007 02:34.27 PM* AMRC78AMRC20070402000000000008712* WIDODGE* 0097118746 WISTATE_MORT_ASSIGN_ASSN *DDSAMRC*

DOCUMENT# 1095568
Office of Register of Deeds
Dodge County, Wisconsin
RECEIVED FOR RECORD
AUG. 17, 2007 AT 10:57AM

*Chris Planasch*

CHRIS PLANASCH - Registrar
Fee Amount:      $11.00

**Document Number**

When Recorded Return To:
DELORES SMITH
RICHMOND MONROE GROUP
PO BOX 458
KIMBERLING CITY, MO 65686

Associated Bank # 0097118746
Investor # 396557
MERS #: 10002900031004001A

Parcel ID No. 292-1315-0922-025

023

### MORTGAGEE'S AFFIDAVIT DESIGNATING MORTGAGE IDENTIFICATION NUMBER (MIN)

THIS IS A STYLE "B" FORM UNDER WIS ACT 110 WITH 3X3 SPACE IN UPPER RIGHT CORNER
**Dodge, Wisconsin     SELLER'S SERVICING #: 0097118746     "BLOTZER"**
**INVESTOR #: 396557**
**MERS #: 10002900031004001A**

The undersigned, Jessica Woods, Vice President, does hereby depose and say as follows:

That this affidavit refers to the Assignment recorded on 06/18/2007 from Associated Bank, National Association, as successor by merger to First Federal Capital Bank, formerly known as First Federal Savings Bank of La Crosse-Madison by amendment to articles to Mortgage Electronic Registration Systems, Inc., in relation to property located at 717 SUNRISE AVE, WAUPUN, WI 53963-9664, and recorded 06/18/2007 in Dodge County, Wisconsin, in Book N/A, Page 121 and/or Document Number 1091963.

That any MIN previously referenced with respect to the assignment referenced above is invalid.

**That the Correct MIN for the assignment referenced above is**
**MERS #: 10002900031004001A**
and that the MERS telephone number to call for information when using this MIN is (888) 679-6377.

Legal: LOT 15, OF EAST VIEW ESTATES TO THE CITY OF WAUPUN, DODGE COUNTY, WISCONSIN,
ACCORDING TO THE PLAT THEREOF RECORDED IN THE OFFICE OF THE REGISTER OF DEEDS, IN AND
FOR DODGE COUNTY, WISCONSIN.

Mortgage Electronic Registration Systems, Inc.
On August 7th, 2007
By: _____
Jessica Woods, Vice President

STATE OF Missouri
COUNTY OF Stone

ON August 7th, 2007, before me, M BEST, a Notary Public ,in and for the County of Stone, State of Missouri,
personally appeared Jessica Woods, Vice President, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

_____

M BEST
Notary Expires: 09/21/2009  #05405772
(This area for notarial seal)

> M. BEST
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Stone County – Comm.#05405772
> My Commission Expires Sept. 21, 2009

**Prepared By:   DELORES SMITH, RICHMOND MONROE PO BOX 458, KIMBERLING CITY, MO  65686 417-739-1176**

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office
This document is ___ pages in length
Date     FEB 16 2023
By _____
Register of Deeds or Deputy
Dodge County, Wisconsin

*KDO*KDOAMRC*08/07/2007 01:39:16 PM* AMRC81AMRC00300000000000000000008114* WIDODGE* 0097118746 WISTATE_AFFIDAVIT *JCR*JCRAMRC*

## SATISFACTION OF MORTGAGE

First Federal Capital Bank certifies that the
following is fully paid and satisfied:

Mortgage executed by CHRISTOPHER J BLOTZER AND
RHONDA S BLOTZER to First Federal Savings Bank
La Crosse - Madison n/k/a First Federal
Capital Bank through amendment of charter and
recorded in the Office of the Register of
Deeds in DODGE COUNTY, Wisconsin, Volume 1243,
Page 143, as Document 958228, and described as
shown below:



*1023550*
Document Number
Office of Register of Deeds
Dodge County, Wisconsin
**RECEIVED FOR RECORD**

Jun 04, 2004

at 11:10 o'clock A. M.

*Chris Planasch*

CHRIS PLANASCH - Registrar

I ... certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is 1 pages in length.

Date FEB 14 2023

By *Chris Planasch*
Register of Deeds or ~~Deputy~~
Dodge County, Wisconsin

Return To:
POST CLOSING & REVIEW
FIRST FEDERAL CAPITAL BANK
PO BOX 1868
LA CROSSE, WI  54602-1868
RE:  97118180 (NEW 97118746)

Parcel #: 292-1315-0922-025

LOT 15, OF EAST VIEW ESTATES TO THE CITY OF WAUPUN, DODGE COUNTY,
WISCONSIN, ACCORDING TO THE PLAT THEREOF RECORDED IN THE OFFICE OF THE
REGISTER OF DEEDS, IN AND FOR DODGE COUNTY, WISCONSIN.

Dated: May 24, 2004                    First Federal Capital Bank

(Corporate Seal Not Required-
Sec. 706.03(2), Wis. Stats.)           BY: _____
                                       SUZANNE KOCH
                                       Assistant Secretary

STATE OF WISCONSIN
OUTAGAMIE COUNTY

On the  above  date, the foregoing instrument was acknowledged before me by the
above named officer.

THIS INSTRUMENT DRAFTED BY
Mary Kay Blaschke                      JENNIFER S HUSS,    Notary Public
First Federal Capital Bank             State of Wisconsin
605 State St                           My commission expires  11/04/07
La Crosse, Wisconsin 546

NOTARY PUBLIC
JENNIFER
S.
HUSS
STATE OF WISCONSIN

Re#     199999                                                    4/29/92

# MORTGAGE

**DOCUMENT NUMBER**

## 958228

NAME & RETURN ADDRESS

CM01    97118180
Review, Packaging, & Shipping Dept
First Federal Savings Bank
P O Box 1868
La Crosse, WI  54602-1868

PARCEL IDENTIFIER NUMBER
292-1315-0922-025

Office of Register of Deeds
Dodge County, WI
**RECEIVED FOR RECORD**

MAY 29 2002

at 11:39 o'clock _a_ M.

CHRIS PLANASCH - Registrar

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is _15_ pages in length.
Date _FEB 16 2023_
By _Chris Planasch_
Register of Deeds or Deputy
Dodge County, Wisconsin

—————————— [Space Above This Line For Recording Data] ——————————

THIS MORTGAGE IS A "CONSTRUCTION MORTGAGE" UNDER 409.313(1)(a) WIS. STATS

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    May 28, 2002
together with all Riders to this document.
(B) "Borrower" is

   CHRISTOPHER J BLOTZER AND RHONDA S BLOTZER, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is  First Federal Savings Bank LaCrosse - Madison

Lender is a  federally-chartered, federally-insured savings bank
organized and existing under the laws of    United States of America

**WISCONSIN** -Single Family- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**        Form 3050 1/01

-6(WI) (0005)
Page 1 of 15                    Initials: CJB RJB
VMP MORTGAGE FORMS - (800)521-7291

VOL **1243** PAGE **144**

Lender's address is 605 State Street, LaCrosse, WI 54601

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated May 28, 2002
The Note states that Borrower owes Lender

*** NINETY TWO THOUSAND SIX HUNDRED FIFTY & 00/100 *** Dollars
(U.S. $ 92,650.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than As Stated in Said Note

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials: CB PB

-6(WI) (0005)  Page 2 of 15  Form 3050 1/01

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the County of Dodge :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT 15, OF EAST VIEW ESTATES TO THE CITY OF WAUPUN, DODGE COUNTY, WISCONSIN, ACCORDING TO THE PLAT THEREOF RECORDED IN THE OFFICE OF THE REGISTER OF DEEDS, IN AND FOR DODGE COUNTY, WISCONSIN.

which currently has the address of

717 SUNRISE AVE          [Street]

WAUPUN          [City], Wisconsin     54963     [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(WI) (0005)          Page 3 of 15          Initials:          Form 3050  1/01

VOL 1243 PAGE 146

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower

Initials: 

-6(WI) (0005)                          Page 4 of 15                          Form 3050  1/01

shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

Case 17-29213-kmp    Doc 81    Filed 03/03/23    Page 51 of 68

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited

Initials: _____

-6(WI) (0005)   Page 7 of 15   Form 3050  1/01

to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials:

Case 17-29213-kmp    Doc 81    Filed 03/03/23    Page 53 of 68

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6(WI) (0005)          Page 9 of 15          Initials: _____          Form 3050 1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

-6(WI) (0005)                    Page 10 of 15                    Form 3050  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection

Initials:

Case 17-29213-kmp    Doc 81    Filed 03/03/23    Page 56 of 68

with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials:

-6(WI) (0005)                    Page 12 of 15                    Form 3050   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Accelerated Redemption Periods. If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

25. Attorneys' Fees. If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

CM01M

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           CHRISTOPHER J BLOTZER           -Borrower


_____          _____ (Seal)
                                           RHONDA S BLOTZER                -Borrower


_____ (Seal)   _____ (Seal)
                            -Borrower                                      -Borrower


_____ (Seal)   _____ (Seal)
                            -Borrower                                      -Borrower


_____ (Seal)   _____ (Seal)
                            -Borrower                                      -Borrower

-6(WI) (0005)                    Page 14 of 15                    Form 3050  1/01

**STATE OF WISCONSIN,**      Dodge.             **County ss:**

     The foregoing instrument was acknowledged before me this   May 28, 2002
by **CHRISTOPHER J BLOTZER and RHONDA S BLOTZER**

My Commission Expires: 12-04-05

_Clarissa Laatsch_
Notary Public, State of Wisconsin

This instrument was prepared by

Jennifer S. Huss
First Federal Savings Bank
La Crosse - Madison

Case 17-29213-kmp    Doc 81    Filed 03/03/23    Page 60 of 68

# MORTGAGE

Document Number: **958229**

Return Address:
C425
97118180

**Wisconsin Partnership for**
**Housing Development, Inc.**
**121 South Pinckney Street, Suite 200**
**Madison, WI  53703**
**Phone:  608-258-5560**

Parcel I.D. Number:     **292-1315-0922-025**

Office of Register of Deeds
Dodge County, WI
RECEIVED FOR RECORD

MAY 29 2002

at 11:39 o'clock       a M.

CHRIS PLANASCH - Registrar

---

Date:  **May 28, 2002**          Mortgage Amount: $    **3,500.00**
Mortgagor:  **CHRISTOPHER J BLOTZER AND RHONDA S BLOTZER, HUSBAND AND WIFE**

Mortgagee:  **First Federal Savings Bank LaCrosse - Madison**
Mortgagor mortgages to Mortgagee for the consideration in the amount shown above the following tract of land:
**LOT 15, OF EAST VIEW ESTATES TO THE CITY OF WAUPUN, DODGE COUNTY, WISCONSIN,**
**ACCORDING TO THE PLAT THEREOF RECORDED IN THE OFFICE OF THE REGISTER OF DEEDS,**
**IN AND FOR DODGE COUNTY, WISCONSIN.**

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is _1_ pages in length.
Date _FEB 16, 2023_
By _Chris Planasch_
Register of Deeds for
Dodge County, Wisconsin

**THIS MORTGAGE** is granted by the Mortgagors to secure a Grant Agreement executed herewith and the terms thereof are incorporated herein.  IN THE event of foreclosure, Mortgagee, its successor and assigns, shall be entitled to elect to proceed under the accelerated redemption periods of Section 846.101 or 103, Wisconsin Statutes.  IN WITNESS WHEREOF, the said Mortgagors have hereunto set their hands and seals the above date.

_____ (Seal)
Mortgagor

_____ (Seal)
Mortgagor

STATE OF WISCONSIN)
_Dodge_____ COUNTY) SS.

Personally came before me this **28th** day of  **May**                    ,  **2002**   , the above-named
**CHRISTOPHER J BLOTZER and RHONDA S BLOTZER**

to me known to be the persons who executed the foregoing instrument and acknowledged the same.

_____ (Seal)
**CHRISTOPHER J BLOTZER**          Mortgagor

_____ (Seal)
**RHONDA S BLOTZER**          Mortgagor

_____ **(Seal)**
**Mortgagor**

_Clarajean Lautsch_  Notary Public
Clarajean Lautsch
_Dodge_          County, Wisconsin
My commission expires **12/04/05**

## ASSIGNMENT OF MORTGAGE:

For the Value Received, the undersigned holder of the Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey unto Wisconsin Partnership for Housing Development, Inc. (hereinafter "Assignee"), a corporation organized and existing under the laws of Wisconsin whose address is listed above, the Mortgage described above together with the Grant Agreement, and all obligations described herein and the money due and to become due thereon and all rights to accrue under the Mortgage.

**First Federal Savings Bank**
**La Crosse - Madison**           **5/28/2002**

_____          Assignor          Date:
Witness

By: _____

Attest          **Jennifer S. Huss**          **Jennifer S. Huss, Residential Loan Coordinator**
This instrument was drafted by:  **First Federal Savings Bank**
**La Crosse - Madison**          tel. no.:  **920-831-2903**

**967998**

Office of Register of Deeds
Dodge County, WI
**RECEIVED FOR RECORD**

OCT 9 2002

at 12:47 o'clock _P_ M.

~~CHRIS PLANASCH~~ - Registrar

RETURN TO:    Review, Packaging, & Shipping Dept
First Federal Savings Bank
P O Box 1868
La Crosse, WI  54602-1868

Parcel ID: 292-1315-0922-025

L116          # SUBORDINATION AGREEMENT          97118746

THIS SUBORDINATION AGREEMENT is made this         3rd     day of    October
2002      , by and between
First Federal Savings Bank La Crosse - Madison

605 State Street, La Crosse, WI  54601                    , a corporation, with a place of business at

and   First Federal Savings Bank La Crosse - Madison

a corporation, with a place of business at     605 State Street, La Crosse, WI  54601

WHEREAS,

CHRISTOPHER J. BLOTZER AND RHONDA S. BLOTZER,
HUSBAND AND WIFE

("Borrower") executed and delivered to    First Federal Savings Bank
La Crosse - Madison                                    mortgage in the sum of
THREE THOUSAND FIVE HUNDRED & 00/100 Dollars
(U.S. $3,500.00)
dated        5/28/02                                5/29/02
in Mortgage Book Volume      1243      , and recorded      158      in the records of
page
Document # 958229

1268 (9802)          2/98
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 5

I hereby certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is _5_ pages in length.
Date _FEB 16, 2023_
By _____
Register of Deeds of
Dodge County, Wisconsin

Dodge County, which mortgage is a lien on the following described property:

LOT 15, OF EAST VIEW ESTATES TO THE CITY OF WAUPUN, DODGE COUNTY, WISCONSIN, ACCORDING TO THE PLAT THEREOF RECORDED IN THE OFFICE OF THE REGISTER OF DEEDS, IN AND FOR DODGE COUNTY, WISCONSIN.

State of Wisconsin

WHEREAS, the Borrower executed and delivered to First Federal Savings Bank La Crosse - Madison a mortgage in the sum of NINETY NINE THOUSAND & 00/100 Dollars (U.S. $99,000.00) which mortgage is intended to be recorded herewith in the records of Dodge County;

WHEREAS,

First Federal Savings Bank La Crosse - Madison has required as a condition of its loan to Borrower that the lien of the mortgage executed by Borrower to

First Federal Savings Bank La Crosse - Madison be subordinated to the lien of the mortgage executed by Borrower to First Federal Savings Bank La Crosse - Madison

to which First Federal Savings Bank La Crosse - Madison has agreed on the conditions provided herein, NOW THEREFORE, intending to be legally bound hereby, the undersigned agree as follows:

1. That the lien of mortgage executed by the Borrower to First Federal Savings Bank La Crosse - Madison is and shall be subordinated to the lien of the mortgage executed by the Borrower to

First Federal Savings Bank La Crosse - Madison

L116A

-1268 (9802)                    Page 2 of 5

provided, however, that the lien of the mortgage to

    First Federal Savings Bank La Crosse - Madison

shall be subordinated to the lien of the mortgage to   First Federal Savings Bank La Crosse - Madison

only to the extent that the lien of the mortgage to

    First Federal Savings Bank La Crosse - Madison

is, as a result of this Subordination Agreement, a validly perfect first lien security interest in the above-described property.

    2. That the mortgage executed by the Borrower to

    First Federal Savings Bank La Crosse - Madison

is and shall be subordinated both in lien and payment to the mortgage executed by the Borrower to

    First Federal Savings Bank La Crosse - Madison

, to the extent that the mortgage to   First Federal Savings Bank La Crosse - Madison

is, as a result of this Subordination Agreement, a validly perfect first lien security interest in the above-described property.

    3. That to the extent of the mortgage of

    First Federal Savings Bank La Crosse - Madison is, as a result of this Subordination Agreement, a validly perfect first lien security interest in the above-described property, the lien of the mortgage executed by Borrower to

    First Federal Savings Bank La Crosse - Madison

shall not be affected or impaired by a judicial sale under a judgment recovered under the mortgage made by the said Borrower to

First Federal Savings Bank La Crosse - Madison

but any such sale shall be subject to the lien of the said mortgage executed by the Borrower to   First Federal Savings Bank La Crosse - Madison

, as well as any judgment obtained upon the bond or note secured thereby.

    4. That the   First Federal Savings Bank La Crosse - Madison

shall notify in writing of any default under the terms of the mortgage executed by the Borrower to

    First Federal Savings Bank La Crosse - Madison

L116B

-1268 (9802)

Page 3 of 5

IN WITNESS WHEREOF, the parties hereto have set their hands and seals hereto as of the date first above written.

First Federal Savings Bank
La Crosse - Madison

By: _Brenda L. Ecker_
    Brenda L. Ecker

Title: Assistant Secretary

First Federal Savings Bank
La Crosse - Madison

By: _Brenda L. Ecker_
    Brenda L. Ecker

Title: Assistant Secretary

**STATE OF** Wisconsin
**COUNTY OF** Outagamie
    On this 3rd day of October , 2002 , before me, the undersigned officer, personally appeared Brenda L. Ecker who acknowledged himself to be the Assistant Secretary of First Federal Savings Bank La Crosse - Madison and, being authorized to do so, executed the foregoing Subordination Agreement for the purpose therein contained by signing the name of the corporation by himself as Assistant Secretary

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Peggy E. Powell_
Peggy E. Powell               Notary Public
My Commission Expires:     05/04/2003

L116C

LSB-1268 (9802)

Page 4 of 5

**STATE OF**     Wisconsin
**COUNTY OF**     Outagamie

    On this   3rd        day of   October           2002                , before me, the
undersigned officer, personally appeared   Brenda L. Ecker
who acknowledged himself to be the   Assistant Secretary
of   First Federal Savings Bank La Crosse - Madison

                         and, being authorized to do so, executed the foregoing
Subordination Agreement for the purpose therein contained by signing the name of the corporation by himself
as   Assistant Secretary

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                        Peggy E. Powell          Notary Public
                                    My Commission Expires:    05/04/2003

PREPARED BY:   Brenda L. Ecker
               First Federal Savings Bank
               702 Eisenhower Dr Suite D Kimberly, WI   54136
               920-831-2903

-1268 (9802)     L116D            Page 5 of 5

State Bar of Wisconsin Form 29-2003
**SATISFACTION OF MORTGAGE**

Document Number      Document Name

*Chris Planasch*

CHRIS PLANASCH - Registrar
Fee Amount: $11.00

The undersigned certifies that **Wisconsin Partnership for Housing Development, Inc.**

is the present owner of a Mortgage executed by **Christopher J. Blotzer and Rhonda S. Blotzer**
to **First Federal Savings Bank LaCrosse-Madison**
now known as Associated Bank ,
to secure payment of $ **3,500.00** , dated **May 28, 2002** ,
recorded on **May 29, 2002** , in the Office of the Register of Deeds
for **Dodge** County, Wisconsin, in (Reel) (Vol.)
of Records, at (Images) (Pages) _____ , as Document No. **958229** ,
and further certifies that the undersigned has a right to satisfy the same, and hereby
satisfies the above-described Mortgage on the following described real estate located
in said county ("Property") (if more space is needed, please attach addendum):
**Lot 15, of East View Estates to the City of Waupun, Dodge County, Wisconsin.
According to the Plat thereof recorded in the Office of the Register of Deeds, in
and for Dodge County, Wisconsin.**

Recording Area

Name and Return Address
Wisconsin Partnership for
Housing Development, Inc.
121 South Pinckney Street, Suite 200
Madison, WI 53703

**292-1315-0922-025**
Parcel Identification Number (PIN)

... ...by certify that this instrument
is a true and correct copy of the
document of record in my office.
This document is _/_ pages in length.
Date _FEB 16 2023_
By _Chris Planasch_
Register of Deeds or ~~Deputy~~
Dodge County, Wisconsin

Dated **November 20, 2007** .
**WISCONSIN PARTNERSHIP FOR HOUSING DEVELOPMENT, INC.**

*Katherine Kamp* (SEAL) _____ (SEAL)
\* **Katherine S. Kamp DEPUTY DIRECTOR** \* _____

**AUTHENTICATION**

Signature(s) _____

authenticated on _____ .

_____
\* _____

TITLE: MEMBER STATE BAR OF WISCONSIN
(If not, _____
authorized by Wis. Stat. § 706.06)

THIS INSTRUMENT DRAFTED BY:

**Jamie Anderson**

_____

**ACKNOWLEDGMENT**

STATE OF WISCONSIN )
) ss.
**DANE** COUNTY )

Personally came before me on **November 20, 2007** ,
the above named **Katherine S. Kamp, Deputy Director**

to me known to be the person(s) who executed the foregoing
instrument and acknowledge the same.

_____
\* **Lisa K. Kratz**
Notary Public, State of Wisconsin
My Commission (is permanent) (expires: **February 24, 2008** )

(Signatures may be authenticated or acknowledged. Both are not necessary.)
NOTE: THIS IS A STANDARD FORM. ANY MODIFICATIONS TO THIS FORM SHOULD BE CLEARLY IDENTIFIED.
SATISFACTION OF MORTGAGE      © 2003 STATE BAR OF WISCONSIN      FORM NO. 29-2003
\*Type name below signatures.

QBMAD\419772.1

0000110

CHRIS PLANASCH
DODGE COUNTY
REGISTER OF DEEDS
127 E Oak Street
Juneau, Wisconsin 53039-1391



CHRISTOPHER J BLOTZER
717 SUNRISE AVE
WAUPUN WI 53963

211653576